ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
DIANA M. RUTOWSKI (SBN 233878)
drutowski@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  +1 415 773 5700
Facsimile:  +1 415 773 5759

ANDREW JOONMIN KIM (SBN 303081)
ajkim@orrick.com
777 South Figueroa Street
Suite 3200
Los Angeles, CA  90017-5855
Telephone:  +1 213 629 2020
Facsimile:  +1 213 612 2499

ORRICK, HERRINGTON & SUTCLIFFE LLP

Attorneys for Plaintiff
Humu, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Humu, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Hulu, LLC, <br><br> Defendant. | Case No. 4:19-cv-327-HSG <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Humu, Inc. ("Humu" or "Plaintiff") brings this action for declaratory judgment against Defendant Hulu, LLC ("Hulu" or "Defendant").

**NATURE OF ACTION AND RELIEF SOUGHT**

1. Humu is an innovative startup founded by three former Google employees. From its inception, Humu has been a people sciences company that applies analytics and machine-learning to support human resources activities. Humu promotes better management through its Nudge Engine℠—a system that uses psychological research and algorithms to encourage employees to take small personal steps to improve the workplace experience. Humu's target customers are entities who employ enough people to make the investment in the Humu systems worthwhile. The decision to purchase and implement Humu's system and services is a significant one because it requires meaningful organizational commitment to implement and make use of the company's software and services.

2. The name HUMU was inspired by the Hawaiian name for the triggerfish. Two of Humu's founders first connected and struck up a friendship in Hawaii. Later in 2017, they decided to form a new company together and looked for a name inspired in part by that auspicious meeting. The triggerfish is the Hawaiian state fish and well known there by its full Hawaiian name "humuhumunukunuku apua'a," or "humuhumu" for short. Its sound and appearance are evocative of "human" in connection with the company's human resources services. With these two qualities, HUMU seemed like the perfect choice. The founders of Humu adopted it as their trade name, adopted the HUMU trademark and service mark for their software and services, and began using it in their business to raise funds and hire employees. In May 2017, they applied for trademark and service mark protection with the United States Patent and Trademark Office. In mid-2017, they acquired the domain name www.humu.com from a third party and began publishing a "stealth mode" website.

3. Approximately six months later, the subscription-based consumer entertainment company Hulu sent a cease-and-desist letter demanding that Plaintiff cease all use of the mark HUMU. Defendant alleged likelihood of confusion and dilution between the HULU and HUMU trademarks as used respectively by Plaintiff and Defendant. Even as the nature of Plaintiff's

1  business became more and more apparent and the reason for any concern evaporated, Defendant
2  continued to contest Plaintiff's right to use its HUMU mark, threatened litigation, and even
3  challenged its HUMU trademark and service mark applications.  All subsequent efforts at
4  resolution have failed.  Accordingly, there is presently an actual controversy between the parties
5  as to whether the HUMU mark as used by Plaintiff is confusingly similar to the HULU mark as
6  used by Defendant, and whether Plaintiff's mark causes dilution.  Plaintiff apprehends that it will
7  be sued, and is not required to sit by and wait for Defendant to decide when it will bring
8  litigation.

9      4.    Accordingly, this is a civil action for declaratory relief to vindicate the rights of
10 Plaintiff to continue use of its trade name, trademark and service mark HUMU.  Plaintiff seeks
11 through this lawsuit declarations that its use of the HUMU mark does not create a likelihood of
12 confusion, cause dilution, or otherwise unlawfully violate Defendant's rights under the Lanham
13 Act or state law.

## THE PARTIES

15     5.    Plaintiff Humu, Inc. is a Delaware corporation with its headquarters and principal
16 place of business in Mountain View, California.

17     6.    Defendant Hulu LLC is a Delaware Limited Liability Company with its principal
18 place of business in California, including offices in San Francisco and Santa Monica.

## JURISDICTION AND VENUE

20     7.    This is an action for declaratory relief arising under the Lanham Act, codified at
21 U.S.C. § 1051 et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This
22 Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

23     8.    This Court has personal jurisdiction over Defendant because it maintains its
24 principal place of business in California, conducts business in this district under the HULU
25 trademark, maintains offices in this District, employs individuals in this District, and claims that
26 the HULU mark is famous, diluted and infringed in this District.  Defendant's assertion that its
27 mark is famous in this District for purposes of trademark law, whether correct or not, necessarily
28 means that Defendant has conducted widespread and systematic business activities in this

1  District.  Furthermore, Defendant intentionally sent a cease-and-desist letter to Plaintiff in this
2  District, threatening litigation and demanding that Plaintiff cease using its trade name and the
3  HUMU mark, knowing that the effects of that demand would be felt in this District.
4      9.   Venue is proper in the Northern District of California pursuant to 28 U.S.C. §
5  1391(b)(2) because a substantial portion of the events giving rise to Plaintiff's claims occurred in
6  this district, and pursuant to 28 U.S.C. § 1391(b)(1) and 1391(d) because Defendant resides in
7  this district.

**FACTUAL ALLEGATIONS**

**A.   Humu's Business and Brand.**

10.   Plaintiff Humu was founded in 2017 by former Google employees Wayne Crosby, Laszlo Bock, and Jessie Wisdom to apply machine learning in the context of human talent development.  Humu is a people sciences company providing support for organizations' human resources departments through its innovative and unique Nudge Engine.  The Nudge Engine begins with an organizational diagnostic that combines scientifically-validated and actionable questions with cutting-edge, comprehensive demographic analytics to develop a thorough understanding of every team within a company or organization.  Through this diagnostic, Humu identifies the top drivers of happiness, productivity, and retention for every team.  Then, with "nudges" generated by the Nudge Engine—nudges are short messages conveying individualized advice or suggestions—the company can take the right actions at the right time.  Humu's nudges activate every person in a team in a way that is customized, contextualized, and complementary. Humu's technology results in measurable improvements in outcomes that matter—retention, innovation, inclusion, productivity, and (most importantly) happiness.

11.   Two of Humu's founders, Wayne and Laszlo, first had a meaningful interaction when Wayne won an award for his work at Google and Laszlo presented the award at a 2012 event in Hawaii.  Their meeting in Hawaii began a friendship, and in 2017 Wayne and Laszlo, together with their third co-founder Jessie Wisdom, started a company together based on people analytics and happiness.  The name "Humu" was inspired by their connection in Hawaii with reference to the Hawaiian triggerfish, which is the state fish of Hawaii and commonly known by

its Hawaiian name "humuhumunukunukuāpuaʻa" or just "humuhumu" for short. The inspiration of the humuhumu fish is also reflected in Humu's branding, which is aquatic-themed and includes stylized fish, aquatic plants, and seascapes. The aquatic theme extends across Humu's branding, including aquatic-themed conference room names at Humu's headquarters.

12. The name "Humu" also lends itself well to a people sciences company because "Humu" is evocative of concepts related to "humans," such as human happiness, human psychology, and, in the business world, human resources.

13. Humu's target customers are large business enterprises and organizations interested in implementing researched-based tools to motivate employees across the organization to take small steps to improve employee happiness, which in turn drives high morale and employee retention. Humu markets its services directly to business executives in a variety of venues in order to build awareness for purchasing decisions at their current and future places of employment. Humu and its desire to bring data-driven analytics to companies has been profiled favorably in business publications such as Forbes and in the technology section of the New York Times.

14. As described herein and in Plaintiff's trademark applications, the products and services that Humu already offers or intends to offer during the reasonably expected pendency of this litigation include the following:

   a. downloadable software for surveying, tracking, gathering, monitoring, and analyzing employee feedback and human resources data to improve employee satisfaction, business operations, and business productivity; downloadable audio files, multimedia files, audio material, and video material featuring information in the field of human resource development for the promotion of employee retention, career growth and increased productivity for employees and employers;

   b. employee survey services; human resource services, namely, collecting, analyzing, reporting, and providing data and feedback from employees for purposes of improving employee performance, employee retention, and corporate culture; human resources research and consultation services focusing on helping clients analyze, respond to, and make process

1    improvements based on employee data and feedback; preparation of reports relating to employee
2    survey results for business purposes; employment recruiting consultation; employment counseling
3    and recruiting; providing information concerning employee benefit plans involving insurance,
4    retirement, disability, medical, dental, financial benefits;

5          c.    leadership development training in the field of human resources and
6    personnel management; business education and training services, namely, developing customized
7    in-company leadership and employee development programs, providing managerial coaching
8    services, and providing in-company keynote presentations to business executives and managers;
9    and

10         d.    software as a service ("SAAS") featuring software for use in gathering and
11   analyzing human resources research and employee surveys; SAAS featuring software for use in
12   surveying, tracking, gathering, monitoring, and analyzing employee feedback and human
13   resources data to improve employee satisfaction, hiring practices, business operations, human
14   resource management procedures, and business productivity; computer monitoring services which
15   tracks employee performance and productivity, benefits programs, human resource processes and
16   transmission of reports and alerts for quality control purposes; computer programming services
17   for survey analysis and reporting.

18       15.    Humu's product is provided through an ongoing services contract that is generally
19   managed by business executives or human resource managers. Once a company purchases
20   Humu's product, Humu works with the company's business executives to develop a sophisticated
21   profile of an organization in order to identify the organization's unique attributes and goals, and
22   custom-tailors its Nudge Engine to assist in bolstering those goals. Humu's services are not off-
23   the-shelf. Due to the large amount of information collected by Humu to support the Nudge
24   Engine and associated cost, Humu's clients engage in careful consideration before using Humu's
25   services and software. Often, the decision to implement Humu's Nudge Engine is made at the
26   highest executive levels of Humu's clients.

27       16.    In short, Humu's prospective clients are not confused in any respect about whether
28   they are dealing with a consumer entertainment company when encountering the mark HUMU on

1  Plaintiff's software and services and evaluating a purchase decision.

**B.    Hulu's Business.**

17.    Defendant Hulu is a subscription-based streaming video services provider.  Hulu streams television shows and movies over the internet to individual and family subscribers. Hulu's content catalog includes original content as well as content licensed from other producers. Hulu competes for the consumer entertainment dollar with over-the-air broadcasters, with internet and cable-based video-on-demand services, and other large streaming entities like Amazon.com and Netflix.  Hulu does not offer services related to human resources or employee happiness and retention.  Hulu's services are offered at a retail-consumer level to individuals and families that subscribe to a monthly subscription service.

18.    The word "hulu" actually means a type of video service in the Mandarin language. According to Hulu's company blog:

> In Mandarin, Hulu has two interesting meanings, each highly relevant to our mission. The primary meaning interested us because it is used in an ancient Chinese proverb that describes the Hulu as the holder of precious things. It literally translates to "gourd," and in ancient times, the Hulu was hollowed out and used to hold precious things. The secondary meaning is "interactive recording". We saw both definitions as appropriate bookends and highly relevant to the mission of Hulu.

**C.    The Parties' Dispute.**

**1.    Hulu's Cease-and-Desist Letter.**

19.    On December 20, 2017, Defendant sent Plaintiff's counsel a cease-and-desist letter.  In the letter, Defendant asserted trademark rights, including U.S. Trademark Registration Nos. 3,878,144, 4,129,912, 4,317,326, 4,614,054, and 4,649,516 (the "HULU Marks"), and alleged that the HUMU mark "is confusingly similar to the HULU Marks" and that Plaintiff's "registration and/or use of the HUMU Marks is likely to confuse, deceive, and/or mislead consumers into believing that [Humu's] good and services come from Hulu or that Hulu has licensed, endorsed, sponsored, or otherwise authorized or approved [Humu's] goods and services."

20.    Defendant's cease and desist letter also asserted that the "HUMU Marks are likely

to cause dilution of the distinctiveness of the famous HULU Marks through blurring and/or tarnishment" and that "registration of the HUMU Marks would infringe and dilute Hulu's valuable trademark rights and constitute unfair competition under Section 43(a) of the Lanham Act."

21. Defendant demanded that Plaintiff abandon its trademark applications with prejudice, stop any and all use and planned use of the HUMU Marks … and provide written assurances to Defendant that Plaintiff would not resume such use in the future. Defendant further expressly threatened "costly litigation."

## COUNT I

### Declaratory Judgment of No Likelihood of Confusion, Trademark Infringement, or Unfair Competition
### (15 U.S.C. §§ 1114(1), 1125(A); Cal. Bus. & Prof. Code § 14245)

22. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs.

23. Likelihood of confusion is an essential element of claims brought pursuant to 15 U.S.C. §§ 1114(a) and 1125(a), which Defendant must establish in order to succeed on a claim brought pursuant to those sections or under analogous state law.

24. Defendant Hulu claims that Plaintiff's use and application for registration of the HUMU mark and trade name as alleged herein is likely to cause confusion with respect to the HULU trademark.

25. Plaintiff denies that its use of the HUMU mark and trade name is likely to cause confusion with respect to Defendant's trademarks. Plaintiff's use the HUMU mark and trade name is not in violation of any rights Defendant may have in the HULU mark under the Lanham Act or California trademark law.

26. Consequently, there is an actual and substantial controversy between Humu and Hulu regarding Humu's rights to use and seek registration of the HUMU mark and trade name. In order to resolve the legal and factual issues raised by Hulu and to afford relief from the controversy which Hulu's assertions have precipitated, Humu is entitled to a declaratory judgment confirming its rights pursuant to 28 U.S.C. § 2201.

# COUNT II

### Declaratory Judgment of No Dilution
### (15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14247)

27. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs.

28. Defendant claims that Plaintiff's use of the HUMU mark and trade name as alleged herein is likely to dilute through blurring or tarnishment the HULU trademark.

29. Plaintiff denies that its use of the HUMU mark and trade name is likely to dilute through blurring or tarnishment Defendant's trademarks. Plaintiff's use of the HUMU mark and trade name is not in violation of any rights Defendant may have in the HULU mark under the Lanham Act or California law.

30. It is Defendant's burden to establish that the HULU mark is famous under 15 U.S.C. § 1125(c) and Cal. Bus. and Prof. Code § 14330, and to establish dilution under those statutes. Defendant cannot meet these burdens.

31. Defendant's use of the HULU mark is relevant to only a portion of the consuming public. Even if it has achieved notoriety among certain broadband internet users willing to consider the use of third-party video streaming services, this kind of niche fame is not the type of secondary meaning that qualifies as fame for purposes of dilution.

32. Nor will Plaintiff's use of the HUMU mark or trade name dilute by blurring Defendant's HULU mark. The HUMU and HULU marks create significantly different commercial impressions. In addition, HUMU has no intention to create an association with the HULU mark. There is no actual association between the HUMU and HULU marks.

33. Nor will Plaintiff's use of HUMU tarnish or otherwise harm the reputation of the Defendant's HULU mark.

34. An actual controversy exists between the parties, and Plaintiff has a reasonable apprehension of being sued by Defendant. Defendant's cease-and-desist states that "costly litigation" can be avoided only if Plaintiff abandons its HUMU marks and name. Defendant's

FIRST AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT
NO. 4:19-CV-327-HSG

1  letter claims that the HULU mark is famous and asserts that Plaintiff will dilute that mark.

2  35. In addition to its letter, Defendant has made similar claims to the Trademark Trial
3  and Appeal Board in opposing Plaintiff's attempt to obtain trademark and service mark
4  registrations.

5  36. Consequently, there is an actual and substantial controversy between Plaintiff and
6  Defendant regarding Plaintiff's rights to use and seek registration of the HUMU mark and trade
7  name. In order to resolve the issues raised by Defendant and to dispel the controversy and cloud
8  which Defendant's assertions have created for Plaintiff, Plaintiff is entitled to a declaratory
9  judgment confirming its rights pursuant to 28 U.S.C. § 2201.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Humu, Inc. respectfully requests that the Court grant the following relief:

A. Judgment in Plaintiff's favor on each count;

B. A declaration from the Court that Plaintiff's use and registration of the HUMU mark and trade name is not likely to cause confusion as to Defendant's use and registration of the HULU marks;

C. A declaration from the Court that Defendant's HULU mark is not famous for purposes of the dilution statutes;

D. A declaration from the Court that Plaintiff's use and registration of the HUMU mark and trade name does not dilute through blurring and/or tarnishment the HULU mark;

E. Reasonable attorneys' fees and the costs of suit; and

F. Such other relief as the Court deems just and proper.

Dated: March 12, 2019

ANNETTE L. HURST
DIANA M. RUTOWSKI
NATHAN SHAFFER
ANDREW J. KIM
Orrick, Herrington & Sutcliffe LLP

By: */s/ Annette L. Hurst*
    ANNETTE L. HURST
    Attorneys for Plaintiff
    Humu, Inc.