Dale M. Cendali (SBN 1969070)
dale.cendali@kirkland.com
Joshua L. Simmons (*pro hac vice* forthcoming)
joshua.simmons@kirkland.com
Hunter A. Vanaria (*pro hac vice* forthcoming)
hunter.vanaria@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Diana M. Torres (SBN 162284)
diana.torres@kirkland.com
Lauren J. Schweitzer (SBN 301654)
lauren.schweitzer@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Defendant Hulu, LLC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| HUMU, INC.<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HULU, LLC,<br><br>　　　　Defendant. | Case No. 4:19-cv-00327-HSG<br><br>**DEFENDANT HULU, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS HUMU, INC.'S FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: May 2, 2019<br>Time: 2:00 p.m.<br>Dept. Courtroom 2, 4th Floor<br>Judge: Hon. Haywood S. Gilliam |

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................................ 2

III.  THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER HUMU'S CLAIMS ................................................................................................................................ 6

    A.    A Party Seeking Relief Under The Declaratory Judgment Act Must Show A Live Case Or Controversy Involving A Matter Independently Within The Court's Jurisdiction ................................................................................................ 6

    B.    A Broad Covenant Not To Sue That Moots The Underlying Controversy Deprives The Court Of Jurisdiction ............................................................................ 7

    C.    Humu's Possible Offering of Vaguely-Defined Services At An Unspecified Future Date Do Not Provide A Basis for Jurisdiction ................................................ 9

    D.    The Pending TTAB Proceedings Concerning Registration Do Not Provide A Basis For Jurisdiction................................................................................................ 10

IV.  CONCLUSION.................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) .................................................................................................... 1, 7, 8, 9

*Coffman v. Breeze Corps.*,
    323 U.S. 323 (1945) ........................................................................................................... 7

*Crossbow Tech., Inc. v. YH Tech.*,
    No. 03 Civ. 4360, 2007 WL 174422 (N.D. Cal. Jan. 22, 2007) ................................... 6, 9

*Crossbow Tech, Inc. v. YH Tech.*,
    531 F. Supp. 2d 1117 (N.D. Cal. 2007) ............................................................................ 6

*Gen. Atomic Co. v. United Nuclear Corp.*,
    655 F.2d 968 (9th Cir. 1981) ............................................................................................ 6

*Homemakers, Inc. v. Chi. Home for the Friendless*,
    169 U.S.P.Q. 262 (7th Cir. 1971) ................................................................................... 11

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988) ............................................................................................ 7

*Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*,
    937 F.2d 1572 (Fed. Cir. 1991) ...................................................................................... 11

*Nike, Inc. v. Already, LLC*,
    663 F.3d 89 (2d Cir. 2011) ............................................................................................... 8

*Royal Palm Filmworks, Inc. v. Fifty-Six Hope Rd. Music, Ltd.*,
    No. 17 Civ. 2336, 2017 WL 4685550 (C.D. Cal. Aug. 17, 2017) .................................. 10

*Salois v. Medifast, Inc.*,
    No. 17 Civ. 1810, 2018 WL 1083466 (S.D. Cal. Feb. 28, 2018) .................................. 7, 8

*Sobini Films v. Tri-Star Pictures Inc.*,
    No. 01 Civ. 06615, 2001 WL 1824039 (C.D. Cal. Nov. 21, 2001) ........................ passim

*Spicy Beer Mix, Inc. v. New Castle Beverage*,
    No. 14 Civ. 00720, 2014 WL 7672167 (C.D. Cal. Aug. 1, 2014) .............................. 7, 8, 9

*Swedlow, Inc. v. Rohm & Haas Co.*,
    455 F.2d 884 (9th Cir. 1972) .......................................................................................... 10

*USANA Health Scis., Inc. v. SmartShake US, Inc.*,
    No. 17 Civ. 00139, 2018 WL 2709215 (D. Utah June 5, 2018) ................................... 8, 9

# TABLE OF AUTHORITIES
## (continued)

**Cases**                                                       **Page(s)**

*Wham-O, Inc. v. Manley Toys, Ltd.*,
　No. 08 Civ. 7830, 2009 WL 6361387 (C.D. Cal. Aug. 13, 2009) ............................................. 6, 11

*White v. Lee*,
　227 F.3d 1214 (9th Cir. 2000) ................................................................................................... 7

**RULES AND STATUTES**

15 U.S.C. § 1114(1) ....................................................................................................................... iv

15 U.S.C. § 1125 ............................................................................................................................ iv

28 U.S.C. § 2201(a) ......................................................................................................................... 6

Cal. Bus. & Prof. Code § 14245 ..................................................................................................... iv

Cal. Bus. & Prof. Code § 14247 ..................................................................................................... iv

Fed. R. of Civ. P. 12(b)(1) ........................................................................................................ iv, 7

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 2, 2019 at 2:00 p.m. at the Oakland Courthouse, Courtroom 2, Fourth Floor, or as soon thereafter as the matter may be heard, before the Honorable Haywood S. Gilliam, United States District Judge for the Northern District of California, Defendant Hulu, LLC, ("Hulu") will and hereby does move for dismissal of Plaintiff Humu, Inc.'s ("Humu") First Amended Complaint.

Defendant seeks dismissal of the above-referenced complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. Hulu has provided Humu with a covenant not to sue. As a result, there is no case or controversy between the parties such that this Court would have subject-matter jurisdiction over this case. This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Dale M. Cendali, the papers on file in this matter, the arguments of counsel, and any other matter the Court wishes to consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Humu's declaratory judgment action seeks relief that this Court does not have jurisdiction to grant.  To bring a declaratory judgment claim of non-infringement or non-dilution, a declaratory judgment plaintiff must show that there is a live case and controversy between the parties with regard to the plaintiff's actual use of the trademark at issue or a similar use that it is prepared to launch immediately.  There is no such case or controversy here because Hulu already covenanted not to sue Humu on its current uses, and even on any similar future uses, and thus this Court has no jurisdiction.

Humu made clear in its Original Complaint (Dkt. No. 1) that it is using the HUMU trademark *only* in connection with business-to-business human resources services.  *See* Compl. ¶¶ 1, 13.  In fact Humu emphasized this fact to underscore that its services are unrelated to Hulu's consumer-focused subscription-based streaming video and entertainment services.  *Id*. ¶¶ 16–17.  Hulu does not take issue with those uses and, on March 11, 2019, Hulu "unconditionally and irrevocably" covenanted not to sue Humu for the uses described in Humu's Original Complaint or similar business-oriented services.  When Humu was provided with Hulu's covenant, its immediate response was to file a near-identical First Amended Complaint (Dkt. No. 26) without including any reference to the covenant and adding vague goods and services descriptions from Humu's trademark applications along with claims that it may offer those goods and service at an unidentified point in the future.

When a covenant not to sue like Hulu's is provided to a declaratory judgment plaintiff like Humu, no subject-matter jurisdiction exists to hear the plaintiff's declaratory judgment claims.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) (controversy mooted by nearly identical covenant).  The language Humu added to its complaint does not save this matter from dismissal.  Humu's real interest is in an advisory ruling by this Court that *any* future use of the HUMU mark, including for unspecified consumer-oriented video services, would not be infringing.  Humu's amendment merely adds extraneous allegations that, at some unspecified date in the future, it might offer additional goods or services.  1st Am. Compl. ¶ 14.  It does not identify any service that Humu is presently offering, or has taken concrete steps to offer in the near future, that would fall outside of the

1  covenant. Vague allegations of an intent to engage in a trademark use at some unknown future date
2  are insufficient to establish a case or controversy. *Sobini Films v. Tri-Star Pictures Inc.*, No. 01 Civ.
3  06615, 2001 WL 1824039, at *4 (C.D. Cal. Nov. 21, 2001) (to show actual case or controversy
4  surrounding future product offerings, plaintiff must show that it is prepared to immediately begin
5  production but for a finding of infringement).

6  Humu's position, and its transparent attempt to save its case by amending its complaint in the
7  face of Hulu's covenant, are untenable. Given that Humu's sole basis for seeking a declaratory
8  judgment of non-infringement and non-dilution has been mooted by Hulu's covenant, this Court now
9  lacks subject-matter jurisdiction and Humu's First Amended Complaint should be dismissed.
10 Moreover, as Humu already has had the opportunity to amend its complaint with an understanding
11 that this Court lacks jurisdiction, the Complaint should be dismissed in its entirety with prejudice.

12 **II.    FACTUAL AND PROCEDURAL BACKGROUND**

13 Launched in 2008, Hulu is a popular subscription-based streaming video services provider
14 offering online streaming of television shows and movies, comprised of both original and licensed
15 content, over the Internet at its website, www.hulu.com, and via portable and handheld Internet-
16 enabled devices such as tablets and smartphones, to individual and family subscribers. 1st Am.
17 Compl. ¶ 17. Hulu offers its services at a retail-consumer level to individuals and families that
18 subscribe to a monthly subscription service. *Id*. According to the Complaint, "Hulu does not offer
19 services related to human resources or employee happiness and retention." *Id*. Among Hulu's
20 common law and federally registered trademarks are those for the HULU word mark and HULU
21 (stylized) marks. Hulu's federally-registered trademarks include Reg. Nos. 3,878,144 (Classes 35,
22 38, 41, and 42); 4,129,912 (Classes 35, 38, 41, and 42); 4,317,326 (Classes 35, 38, and 41);
23 4,614,054 (Classes 9, 35, 38, and 41); and 4,649,516 (Class 9) (collectively, "Hulu Marks").
24 *Id*. ¶ 19.

25 Humu calls itself a startup "people sciences company," founded in 2017, that "applies
26 analytics and machine-learning to support human resource activities." 1st Am. Compl. ¶¶ 1, 10.
27 Humu purports to target large business enterprises and organizations to utilize its research-based
28 tools "to motivate employees," "improve employee happiness," and drive "high morale and

employee retention" (the "Alleged Humu Services"). *Id.* ¶ 13. Humu claims to engage exclusively in business-to-business transactions, marketing its services "directly to business executives in a variety of venues." *Id*.

The Alleged Humu Services rely on Humu's "Nudge Engine" technology, which combines "scientifically-validated and actionable questions with cutting-edge, comprehensive demographic analytics to develop a thorough understanding of every team within a company or organization." *Id.* ¶ 10. Humu's "Nudge Engine" provides its users with "nudges," which constitute "short messages conveying individualized advice or suggestions" so that "the company can take the right actions at the right time." *Id*. According to Humu, the Alleged Humu Services "are not off-the-shelf," but rather are "provided through an ongoing services contract that is generally managed by business executives or human resource managers," often "at the highest executive levels of Humu's clients." *Id.* ¶ 15.

On May 2, 2017, Humu filed with the USPTO four applications to register the HUMU word mark: (1) Application Serial No. 87/433,016 in International Class 35 to cover, among other things, "[h]uman resource services, namely, collecting, analyzing, reporting, and providing data and feedback from employees for purposes of improving employee performance, employee retention, and corporate culture" and "[h]uman resources research and consultation services focusing on helping clients analyze, respond to, and make process improvements based on employee data and feedback;" (2) Application Serial No. 87/433,012 in International Class 9 for services including "[d]ownloadable software for surveying, tracking, gathering, monitoring, and analyzing employee feedback and human resources data;" (3) Application Serial No. 87/433,020 in International Class 41 including "[l]eadership development training in the field of human resources and personnel management;" and (4) Application Serial No. 87/433,022 in International Class 42 including "[s]oftware as a service (SAAS) featuring software for use in gathering and analyzing human resources research and employee surveys" (collectively, the "Humu Applications").[1]

---

[1] On March 12, 2018, Hulu filed a Notice of Opposition with the Trademark Trial and Appeal Board ("TTAB") opposing the registration of the Humu Applications. The TTAB proceedings relating to the Humu Applications are currently stayed pending the outcome of this federal litigation.

On December 20, 2017, Hulu sent a cease and desist letter (the "Hulu Letter") to Humu regarding the Humu Applications. *See* Declaration of Dale M. Cendali ("Cendali Decl.") Ex. 1. Hulu pointed out as a primary concern in the Hulu Letter that the Humu Applications were "filed based on Section 1(b) of the Lanham Act (Intent-to-Use)." *Id.* Ex. 1, at 2. In other words, because the Humu Applications sought to cover unknown future business activities, they did not make it clear that Humu's business would be the type of business-to-business human resources activities described in the Complaint. The Hulu Letter also drew attention to the similarity of appearance of the mark that Humu chose to use on its website to Hulu's own Hulu mark as used on www.hulu.com, which caused Hulu concern:

   

*Id.*

After Hulu sent its letter, Humu significantly changed its website, and altered its logo for the HUMU mark to a new mark:

Humu made this change in the context of ongoing communications between the parties starting with the Hulu Letter and continuing until Humu filed its Original Complaint. During those discussions, both parties gained a better understanding of the other's business and the associated use of its marks.

Without warning, Humu filed its Original Complaint on January 18, 2019. The Original Complaint claimed that there is an ongoing dispute involving the Alleged Humu Services, and went to great lengths to contrast Humu's business-to-business human resources services with Hulu's direct-to-consumer video and entertainment services in an effort to show the Court that Hulu had no basis to claim likelihood of confusion.

On March 11, 2019, Hulu provided Humu with a covenant not to sue (the "Covenant"). Cendali Decl. Ex. 2. Under the Covenant, Hulu acknowledges the Alleged Humu Services as described in Paragraph 10 of the Original Complaint (which were not changed in the First Amended

Complaint).  *Id.* at 1.  It further acknowledges that Humu:

> "asserts that Humu markets services under the HUMU mark to business executives and describes its target customers as 'large business enterprises and organizations interested in implementing researched-based tools to motivate employees across the organization to take small steps to improve employee happiness, which in turn drives high morale and employee retention' (collectively, the 'Humu Customers')."

*Id.*  Having made these acknowledgements, Hulu then gave Humu a very broad covenant not to sue Humu for the good and services at issue in the complaint or any similar goods and services, either in the past or in the future.  Specifically, Hulu:

> "***unconditionally and irrevocably*** covenants to refrain from making ***any claim(s) or demand(s)***, or from commencing, causing, or permitting to be prosecuted any action in law or equity, against Humu or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities acting on their behalf and all customers of each of the foregoing (whether direct or indirect), ***on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law in the United States relating to the Hulu Marks based on Humu's use of the HUMU mark in the manner described in the Complaint in connection with the Humu Services offered to the Humu Customers, or in connection with any other goods or services similar to the Humu Services marketed directly to the Humu Customers***, regardless of whether those goods or services are produced, distributed, offered for sale, advertised, sold, or otherwise used in commerce before or after the Effective Date of this Covenant."

*Id*. at 1–2 (emphasis added).

After providing Humu with the Covenant, Hulu explained that the Covenant resolves this litigation and asked Humu whether it would voluntarily dismiss the Original Complaint.  On March 12, 2019, Humu responded by indicating that it was considering the Covenant.  Cendali Decl. Ex. 3.  Later that day, rather than dismiss its Original Complaint, Humu filed the First Amended Complaint, without explanation.  A redline reflecting the marginal changes between the Original Complaint and the First Amended Complaint is attached as Exhibit 4 to the Cendali Declaration.  The minimal material added to the First Amended Complaint merely adds a reference to the vague goods and services descriptions from the Humu Applications and claims that it may offer them at an unidentified point in the future.  1st Am. Compl. ¶ 14; *see also* Cendali Decl. Ex. 4.  The First Amended Complaint does not mention Hulu's Covenant.

### III. THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER HUMU'S CLAIMS

#### A. A Party Seeking Relief Under The Declaratory Judgment Act Must Show A Live Case Or Controversy Involving A Matter Independently Within The Court's Jurisdiction

"It is a fundamental principle that federal courts are courts of limited jurisdiction." *Crossbow Tech., Inc. v. YH Tech.*, No. 03 Civ. 4360, 2007 WL 174422, at *2 (N.D. Cal. Jan. 22, 2007). Moreover, a "federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Id.* (quoting *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir. 1981)). The Declaratory Judgment Act provides that "in a case of ***actual controversy***" a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). In an action for declaratory relief, "the plaintiff must establish two basic requirements: (1) the court has federal subject matter jurisdiction over the claims and (2) an actual case or controversy exists." *Id.*; *Wham-O, Inc. v. Manley Toys, Ltd.*, No. 08 Civ. 7830, 2009 WL 6361387, at *2 (C.D. Cal. Aug. 13, 2009). The Declaratory Judgment Act, however, "does not provide litigants with an independent jurisdictional basis for suits in a federal court." *Id.* Instead, "there must be a source of federal jurisdiction external to the Declaratory Judgement Act," *id.*, and "***the burden rests on the party asserting federal subject matter jurisdiction*** to prove its existence." *Crossbow*, 2007 WL 174422, at *2 (emphasis added). In addition, the "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1120 (N.D. Cal. 2007).

Where no "definite and concrete" case or controversy exists, the dispute seeks "an advisory opinion based on 'a hypothetical state of facts.'" *Sobini Films*, 2001 WL 1824039, at *2 (internal citation omitted). Such a dispute "fails to invoke federal court jurisdiction." *Id.* The declaratory judgment procedure "is available in the federal courts only in cases involving an actual case or controversy . . . and it may not be made the medium for securing an advisory opinion in a controversy which has not arisen." *Coffman v. Breeze Corps.*, 323 U.S. 323, 324 (1945) (internal citations omitted). Pursuing an advisory opinion in this manner, as Humu does here, "go[es] against the very purpose of the Declaratory Judgment Act." *Spicy Beer Mix, Inc. v. New Castle Beverage*,

No. 14 Civ. 00720, 2014 WL 7672167, at *6 (C.D. Cal. Aug. 1, 2014).

Under Federal Rule 12(b)(1), "a defendant may seek to dismiss a complaint for lack of subject matter jurisdiction." *Salois v. Medifast, Inc.*, No. 17 Civ. 1810, 2018 WL 1083466, at *4 (S.D. Cal. Feb. 28, 2018); *see also*, Fed. R. Civ. P. 12(b)(1). A challenge to jurisdiction under Federal Rule 12(b)(1) may be "either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). In a factual challenge, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Spicy Beer Mix*, 2014 WL 7672167, at *3 (internal citation omitted). Where, as here, a defendant challenges jurisdiction based on a covenant not to sue sent to the plaintiff, the challenge to jurisdiction is factual. *Id.* (citation omitted). When considering a factual jurisdictional attack, "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction," including a covenant not to sue. *Id.* (quoting *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988)). Moreover, the court "need not presume the truthfulness of the plaintiffs' allegations." *White*, 227 F.3d at 1242.

### B. A Broad Covenant Not To Sue That Moots The Underlying Controversy Deprives The Court Of Jurisdiction

Humu's First Amended Complaint should be dismissed pursuant to Federal Rule 12(b)(1) because Humu cannot meet its burden to show subject-matter jurisdiction. Hulu's Covenant resolved any actual case or controversy that undergirded Humu's declaratory judgment claims. "A case becomes moot—and therefore no longer a '[c]ase' or '[c]ontroversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Nike*, 568 U.S. at 91. A covenant not to sue moots a declaratory judgment action based on a defendant's intellectual property enforcement activities where the covenant is "broad and unrestricted" enough to make clear that the defendant's complained-of enforcement efforts "cannot reasonably be expected to recur.'" *Spicy Beer Mix*, 2014 WL 7672167, at *5; *see also Nike*, 568 U.S. at 95 (covenant not to sue mooted case where defendant's efforts to enforce its trademark against plaintiff made clear that the complained-of enforcement efforts allegedly giving rise to an actual controversy could "reasonably be expected to recur"). This is so even where the covenant is

unilaterally granted. *Spicy Beer Mix*, 2014 WL 7672167, at *2, *5; *see also Nike*, 568 U.S. at 98–99; *Salois*, 2018 WL 1083466, at *4 ("[T]he agreement of the plaintiff is not required to moot a case.").

When considering whether a covenant not to sue eliminates a justiciable case or controversy in a declaratory judgment action, courts look to the totality of the circumstances, including "(1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and (3) evidence of intention . . . on the part of the party asserting jurisdiction, to engage in [conduct] not covered by the covenant." *Spicy Beer Mix*, 2014 WL 7672167, at *5 (citing *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013)).  Declaratory judgment complaints are dismissed as moot based on covenants not to sue when the covenants are (a) unconditional and irrevocable, (b) reach beyond the specific parties in suit, and (c) apply to both present conduct and similar conduct in the future.  *See Nike*, 568 U.S. at 93; *Spicy Beer Mix*, 2014 WL 7672167, at *5 (covenant not to sue mooted declaratory judgment claims where covenant was unconditional and irrevocable, reached beyond specific parties in suit, and applies to both present conduct alleged and similar future conduct); *USANA Health Scis., Inc. v. SmartShake US, Inc.*, No. 17 Civ. 00139, 2018 WL 2709215, at *7 (D. Utah June 5, 2018) (same).

Here, Hulu's Covenant mirrors the covenant that the Supreme Court held mooted the *Nike* case and thus meets each of the factors identified by the *Nike* court.  Hulu's Covenant is "unconditional[]," and "irrevocabl[e]" just like in *Nike*.  *Compare* Cendali Decl. Ex. 2, at 1 *with Nike*, 568 U.S. at 93; *Spicy Beer Mix*, 2014 WL 7672167, at *5 ("irrevocable and unconditional" covenant removed jurisdiction from court, resulting in dismissal with prejudice).  Also like the *Nike* covenant, Hulu agrees to refrain from "making any claim(s) or demand(s)" on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution based on Humu's use of the HUMU mark as alleged in the Original Complaint.  *Compare* Cendali Decl. Ex. 2, at 1 *with Nike*, 568 U.S. at 93.  Moreover, Hulu's Covenant extends beyond the parties in suit to cover a variety of persons affiliated with Humu, including its employees and agents, just as the covenant did in *Nike*.  *Id.*; *Spicy Beer Mix*, 2014 WL 7672167, at *5 (covenant not to sue that included "[Plaintiffs'] employees, distributors, and customers" mooted case).  Finally, like the

covenant in *Nike*, Hulu's Covenant covers "any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law" related to all of Humu's actual uses of the HUMU mark, as well as to any future uses of the HUMU mark in connection with similar goods or services marketed to the customers that Humu identified initially in its Original Complaint as its target market.  *Compare* Cendali Decl. Ex. 2, at 1 *with Nike*, 568 U.S. at 93.  Accordingly, Hulu's Covenant provides ample assurance to Humu that Humu's alleged actual uses of the HUMU mark described in the First Amended Complaint will not be the subject of a lawsuit by Hulu, and thus the First Amended Complaint should be dismissed.  *See Crossbow*, 2007 WL 174422, at *3 (granting motion to dismiss for lack of jurisdiction where covenant not to sue cross-referenced list of products provided by declaratory judgment counterclaimant); *Spicy Beer Mix*, 2014 WL 7672167, at *5 (covenant not to sue mooted declaratory judgment claims where it was sufficiently broad that defendants' patent enforcement efforts against plaintiff could not reasonably be expected to recur); *USANA Health Scis., Inc.*, 2018 WL 2709215, at *7 (covenant not to sue mooted action for declarations of trademark non-infringement and invalidity and for cancellation).

### C. Humu's Possible Offering of Vaguely-Defined Services At An Unspecified Future Date Do Not Provide A Basis for Jurisdiction

Humu's inclusion, in its First Amended Complaint, of a vague description of the products and services that it "already offers or intends to offer during the reasonably expected pendency of this litigation" tellingly does not specify which additional products and services it "already offers" and which it "intends to offer" at some unknown time in the future.  1st Am. Compl. ¶ 14.  Such vague allegations do not suffice to create an actual case or controversy sufficient to ground a declaratory judgment action.  To establish a case or controversy based on future product or service offerings, the plaintiff must have "engaged in preparations for production such that 'but for a finding that the product infringes or for extraordinary and unforseen contingencies, the plaintiff would and could begin production immediately.'"  *Sobini*, 2001 WL 1824039, at *4 (internal citations omitted); *see also Swedlow, Inc. v. Rohm & Haas Co.*, 455 F.2d 884, 886–87 (9th Cir. 1972) (to ground declaratory judgment action, plaintiff must have both ***immediate*** capability ***and*** intent to produce

allegedly infringing item, otherwise court's decision would "amount to an advisory opinion"); *Royal Palm Filmworks, Inc. v. Fifty-Six Hope Rd. Music, Ltd.*, No. 17 Civ. 2336, 2017 WL 4685550, at *5 (C.D. Cal. Aug. 17, 2017), *aff'd*, 747 F. App'x 624 (9th Cir. 2019) (holding that "if a court were to entertain declaratory relief based on an unfinished work, 'the relief requested would necessarily take the form of an advisory opinion'" (internal citation omitted)).

Humu does not allege any facts about concrete steps taken to prepare to launch these vaguely defined intended goods or services or the intended launch date—let alone facts indicating that it could immediately launch these intended goods or services. In doing so, it essentially seeks an advisory opinion outside the scope of this Court's jurisdiction. *Sobini Films*, 2001 WL 1824039, at *5–6 (finding plaintiff was "impermissibly requesting an advisory opinion" based on plaintiff's "lack of concrete steps toward" the activity described in its complaint). Humu's vague allegations thus do not and cannot establish a case or controversy sufficient to ground a declaratory judgment action. *Id*. at *4 (no case or controversy regarding plaintiff's right to use ZORRO mark and produce film based on Zorro treatment where plaintiff alleged that it incurred preliminary costs but had not hired a writer for screenplay or entered preliminary agreements with parties integral to commencing production of film); *Royal Palm Filmworks*, 2017 WL 4685550, at *5 (no actual case or controversy to support suit for declaration of non-infringement of copyright or trademark where neither complaint nor exhibits disclosed when plaintiff would begin production of the contested film).[2] Were this Court to rule now, "it would simply be rendering an advisory opinion based solely upon [Humu's] assertion" that it intends to engage in the activities described in the First Amended Complaint. *Sobini Films*, 2001 WL 1824039, at *7–8 (finding "Plaintiff has not taken sufficient steps to establish a case or controversy entitling it to a declaratory judgment action.").

### D.   The Pending TTAB Proceedings Concerning Registration Do Not Provide A Basis For Jurisdiction

The stayed TTAB proceedings regarding the Humu Applications also do not create a basis for jurisdiction in this Court. When faced with similar circumstances, courts consistently have found

---

[2]   Should Humu attempt to offer evidence of any steps taken to launch any new goods or services that it asserts are not covered by Hulu's Covenant, Hulu reserves its right to seek jurisdictional discovery into such claims.

that, even where such TTAB proceedings exist between the parties to a federal litigation, no independent basis for jurisdiction exists. *Wham-O*, 2009 WL 6361387, at *4. The *Wham-O* court, as here, was faced with a declaratory judgment action filed "in response to cancellation and opposition proceedings initiated by Defendants before the TTAB" and, finding "no infringement claims or any other legal claims between the parties and the Marks involved in this action," found "no threatened action on the part of the Defendants sufficient to establish an independent basis for jurisdiction" where "the TTAB proceedings [could not] be construed as a potential claim for infringement." *Id*. In so doing, the *Wham-O* court cited *National Cable Television Association v. America Cinema Editors, Inc.*, in which the court determined that "an objection to registration does not legally equate with an objection to use, that is, a charge of infringement." 937 F.2d 1572, 1581 (Fed. Cir. 1991). Similarly, in *Homemakers, Inc. v. Chicago Home for the Friendless*, the Seventh Circuit affirmed the district court's decision to dismiss the plaintiff's declaratory judgment action requesting injunctive relief against the defendant's TTAB proceeding regarding its HOMEMAKERS' mark, finding that the defendant's cancellation petition did not provide a basis for jurisdiction where there was no independent charge of infringement. 169 U.S.P.Q. 262, 263 (7th Cir. 1971), *cert. denied*, 404 U.S. 831 (1971). Accordingly, the TTAB proceedings alone do not create jurisdiction in this Court.

## IV. CONCLUSION

For the foregoing reasons, Hulu requests that this Court dismiss Humu's First Amended Complaint in its entirety with prejudice, just as the *Nike* court dismissed Already's complaint after Nike provided its covenant not to sue.

Dated: March 26, 2019

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Dale M. Cendali*

Attorneys for Defendant Hulu, LLC

Email: dale.cendali@kirkland.com

**CERTIFICATE OF SERVICE**

On March 26, 2019, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Dale M. Cendali*
Dale M. Cendali