ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
DIANA M. RUTOWSKI (SBN 233878)
drutowski@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

ANDREW JOONMIN KIM (SBN 303081)
ajkim@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA  90017-5855
Telephone:     +1 213 629 2020
Facsimile:     +1 213 612 2499

Attorneys for Plaintiff
Humu, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Humu, Inc.,<br><br>               Plaintiff,<br><br>     v.<br><br>Hulu, LLC,<br><br>               Defendant. | Case No. 4:19-cv-00327-HSG<br><br>**HUMU'S OPPOSITION TO HULU'S MOTION TO DISMISS**<br><br>Hearing Date:  June 20, 2019<br>Time:           2:00 p.m.<br>Dept.:         Courtroom 2, 4th Floor<br>Judge:       Hon. Haywood S. Gilliam |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

STATEMENT OF FACTS ................................................................................................... 3

        A.    Humu's Business........................................................................................ 3

        B.    Hulu Threatens To Sue And Brings Worldwide Trademark
              Proceedings. .............................................................................................. 4

        C.    Humu Initiates Litigation After Failure Of Protracted Settlement
              Discussions................................................................................................ 5

ARGUMENT ................................................................................................................... 6

    I.     HULU HAS THE BURDEN TO DEMONSTRATE THAT THE CASE IS
          MOOT IN ORDER TO DEPRIVE THE COURT OF SUBJECT MATTER
          JURISDICTION.......................................................................................... 7

    II.    HULU CANNOT MEET ITS BURDEN FOR DISMISSAL UNDER THE
          EXISTING CIRCUMSTANCES.................................................................... 8

        A.    The Language Of The Covenant Is Problematic Even As Applied
              To Humu's Current Business. ................................................................... 10

        B.    Hulu Did Not Revise The Covenant To Cover Alleged Future
              Activities Of The FAC And Has Not Withdrawn Its TTAB
              Proceedings. ............................................................................................ 14

        C.    Humu Intends To Grow Its Business In Ways That Hulu Has
              Already Threatened. .................................................................................. 17

CONCLUSION .............................................................................................................. 19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
    356 F. Supp. 3d 889 (N.D. Cal. 2018) ...................................................................................7

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ........................................................................................ *passim*

*ArcelorMittal v. AK Steel Corp.*,
    856 F.3d 1365 (Fed. Cir. 2017)...................................................................................16

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    135 S. Ct. 1293 (2015) ................................................................................................16

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*,
    666 F.2d 393 (9th Cir. 1982)........................................................................................7

*ChromaDex, Inc. v. Elysium Health, Inc.*,
    No.: SACV 16-02277-CJC(DFMx), 2017 WL 7080237 (C.D. Cal. Nov. 28,
    2017) ..............................................................................................................................9

*Crossbow Tech., Inc. v. YH Tech.*,
    531 F. Supp. 2d 1117 (N.D. Cal. 2007) ......................................................................9

*Crossbow Tech., Inc. v. YH Tech.*,
    No. C 03-04360 SI, 2007 WL 174422 (N.D. Cal. Jan. 22, 2007)..............................13

*Delphix Corp. v. Embarcadero Techs., Inc.*,
    749 F. App'x 502 (9th Cir. 2018) .........................................................................14, 15

*Delphix Corp. v. Embarcadero Techs., Inc.*,
    No. 16-cv-00606-BLF, 2016 WL 4474631 (N.D. Cal. Aug. 25, 2016), *aff'd on*
    *this ground*, 749 Fed. Appx. 502 (9th Cir. 2018).................................................13, 15

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
    No. 13-cv-05038 NC, 2015 WL 7874323 (N.D. Cal. Dec. 3, 2015) .............8, 10, 17

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) .....................................................................................................7

*Neilmed Prods., Inc. v. Med-Systems, Inc.*,
    472 F. Supp. 2d 1178 (N.D. Cal. 2007) .................................................................7, 15

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    556 F.3d 1294 (Fed. Cir. 2009).................................................................................8, 9

*Rhoades v. Avon Prods., Inc.*,
    504 F.3d 1151 (9th Cir. 2007)...............................................................................15, 16

*Spicy Beer Mix, Inc. v. New Castle Beverage*,
    No. CV 14–00720 SJO, 2014 WL 7672167 (C.D. Cal. Aug. 1, 2014)...............................3, 12

*USANA Health Sciences, Inc. v. SmartShake US, Inc.*,
    No. 2:17–cv–00139–DN, 2018 WL 2709215 (D. Utah June 5, 2018) ....................................13

*Wham-O, Inc. v. Manley Toys, Ltd.*,
    No. CV 08–07830 CBM (SSx), 2009 WL 6361387, at *1 (C.D. Cal. Aug. 13,
    2009) ............................................................................................................................15

**Statutes**

15 U.S.C. § 1071(b) .........................................................................................................16

15 U.S.C. § 1114 .............................................................................................................16

15 U.S.C. § 1119 .............................................................................................................16

15 U.S.C. § 1125(c) .........................................................................................................16

### INTRODUCTION AND SUMMARY OF ARGUMENT

This Court had subject matter jurisdiction when the case was filed based upon a substantial, ongoing controversy.  That controversy involved threats of litigation in the form of a cease and desist letter as well as actual litigation before the United States Patent and Trademark Office Trademark Trial and Appeals Board ("TTAB").  Hulu alleges at the TTAB that there is a likelihood of confusion and dilution from Humu's intended uses of its mark.  Hulu also expanded those disputes outside the United States with trademark opposition proceedings in multiple foreign jurisdictions.  The parties entered into lengthy negotiations during which they tried to settle their differences and failed.  Only after the failure of those negotiations did Humu bring suit in this Court, as it was apparent that a protracted worldwide dispute was in the offing.

Hulu now attempts to deprive this Court of its jurisdiction over the parties' dispute with a later, unilaterally-granted covenant not to sue, provided on March 11, 2019 after this suit was filed (the "Covenant").  Humu had no part in drafting or negotiating the Covenant.  The wording of the Covenant was determined in the sole discretion of Hulu—including its special "definitions."  After Humu reviewed the Covenant, it feared that Hulu was simply playing games with the wording of those "definitions," so it filed its First Amended Complaint in order to suss out whether the controversy was really over, or whether it continues.  The answer is now clear— the controversy continues.  Hulu did not revise its covenant to unequivocally encompass all of Humu's activities.  In the more than six weeks since Hulu bestowed its specially drafted Covenant upon Humu, it has not withdrawn its TTAB opposition proceedings.  It has not withdrawn its foreign trademark challenges.   It declined to revise its Covenant when presented with a second and more detailed set of allegations regarding the controversy.  Instead, it appears that Hulu wishes to pursue the Damoclean option.

Thus, rather than simply removing all doubt about its intentions either through a revised covenant not to sue, by proceeding to litigation, or by seeking a settlement, Hulu filed its Motion to Dismiss (ECF No. 30) and rested on its carefully worded "definitions."  The Motion proceeds from the premise that Humu has the burden to overcome Hulu's Covenant in order to establish subject matter jurisdiction.  This is exactly wrong.  Humu has only the burden to demonstrate

1  there was an actual controversy supporting subject matter jurisdiction at the time of filing the

2  Complaint—a burden it easily satisfies as a result of Hulu's cease and desist letter, protracted

3  (and ongoing) allegations of likely confusion and dilution in TTAB opposition proceedings,

4  foreign controversies, and failed settlement negotiations.  To deprive the Court of its jurisdiction

5  by attempting to unilaterally moot the controversy, Hulu assumes the burden of demonstrating

6  that its efforts to do so have been successful—that the dispute will not recur.  The burden to

7  demonstrate voluntary cessation is high—Hulu faces the "formidable burden" of establishing

8  "that the covenant not to sue is of sufficient breadth and force that [Humu] can have no

9  reasonable anticipation of a future trademark infringement claim from [Hulu]." *Already, LLC v.*

10  *Nike, Inc.*, 568 U.S. 85, 91, 102 (2013); *see also id.* at 102 (Kennedy, J., concurring).  Hulu must

11  make this "absolutely clear."  *Id.* at 91.   Part I, *infra*.

12       *Already* sets out a three-part test for assessing mootness as a result of voluntary cessation,

13  *see id.* at 90, and Hulu fails every part of it.  First, the language of the Covenant is highly

14  problematic.  Hulu is using special "definitions" that do not match Humu's ongoing and

15  anticipated activities as alleged in the Complaint and FAC.  Hulu appears to be drawing carefully

16  contrived lines in its Covenant so that it can maintain an ongoing threat regarding certain

17  activities.  This is exactly the Damoclean option—a threat of later litigation if Humu steps out of

18  line—that Hulu is not entitled to retain.  Part II(A), *infra*.

19       Second, the dispute is *actually ongoing*.  More than six weeks after granting its Covenant,

20  Hulu still has not withdrawn its multiple TTAB opposition proceedings.  Nor has it ceased any of

21  its foreign trademark attacks on Humu.  These other proceedings, coupled with Hulu's failure to

22  revise the Covenant to encompass *all* of Humu's intended uses set out in the FAC, demonstrate

23  that Hulu intends to continue the fight.  Part II(B), *infra*.

24       Third, the Covenant does not encompass Humu's expected business activities as laid out

25  in the FAC and in the accompanying Declaration of Wayne Crosby.  Humu is designed to help

26  people in the workplace—to do so it must implement its platform and services beyond the narrow

27  "business-to-business" environment Hulu's Covenant assumes.  At the end of the day, Hulu's

28  platform only works by servicing individuals and Humu intends to do so across a wide variety of

HUMU'S OPP. TO MTD
CASE NO. 4:19-cv-00327-HSG

circumstances.  The parties' dispute will remain live as Humu takes reasonably anticipated steps to expand its company and use of the HUMU mark.  Part II(C), *infra*.

The Motion to Dismiss should be denied.

### STATEMENT OF FACTS[1]

#### A.    Humu's Business.

Humu is a startup focused on the happiness and productivity of individuals at work.  It offers services based on innovative applications of people science, including analytics and machine learning, to support employees and the executives who manage them.  The name HUMU was inspired by the Hawaiian name for the triggerfish—"humuhumunukunuku apua'a," or "humuhumu" for short—because two of Humu's founders first connected in Hawaii.  Consistent with the origin of its name, Humu's branding is aquatic-themed.  HUMU's sound and appearance are also evocative of "human" in connection with the company's human resources services. Humu has made substantial investments in the Humu brand and HUMU mark—and it is poised to make more investments in its brand as it expands its marketing and operational reach.

One of Humu's lead products is its Nudge Engine[SM]—a system that uses psychological research and algorithms to encourage employees to take small steps to improve the workplace environment.  Nudges are individualized messages from "Wayne at Humu" delivered to employees encouraging them to act in small ways to improve the workplace and employee happiness.  Crosby Decl. ¶ 10.  Humu is retained by companies, enterprises, and organizations to provide its services to both human resources departments, management, and individual employees who receive its Nudges.  *See* ECF No. 25 (FAC) ¶ 1; Crosby Decl. ¶¶ 8-9.  Humu's current services are part of a suite of offerings that touch every organizational level of its clients—from top-level insights provided directly to management to direct-to-individual training, feedback, insights, and reports provided via cloud-based software.

---

[1] A 12(b)(1) motion to dismiss based on a covenant not to sue is a "factual jurisdictional attack" where the "court is *not* restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony."  *Spicy Beer Mix, Inc. v. New Castle Beverage*, No. CV 14–00720 SJO (JEMx), 2014 WL 7672167, at *3 (C.D. Cal. Aug. 1, 2014) (emphasis added).  These facts are accordingly not limited to the allegations in Humu's FAC.

At the management level, Humu provides continual insight reports derived from various data sources including employee surveys and interactions with the Humu software services about employees' overall passion, satisfaction, and connection in the workplace and their self-reported likelihood to stay at the company.  Crosby Decl. ¶¶ 13-15.  Additionally, Humu analyzes and provides reports on employee benefits programs, company policies and practices, work-from-home policies, employee benefits, and recruiting and retention, as it has done for firms ranging from leading nonprofits, to startups, to Fortune 500 companies.  *Id*. ¶ 8.  Humu uses a variety of software solutions and digital media to communicate with managers.  Videos and information are available to Humu's clients through private channels in platforms like YouTube.  *Id*. ¶ 18.  Humu provides digital reports through both its cloud-based software interface, PDF documents, and digital media presentations.  Managers receive custom "Nudges" generated by the Nudge Engine and tailored to the clients' needs through cloud-based software and email.

Humu's services are designed to improve the experience of individual employees, which means Humu's insights are implemented by providing Humu-branded services directly to individual employees throughout the entire employee lifecycle from hire (onboarding) to the employee's exit.  *Id*. ¶ 12.  Touchpoints through the employee lifecycle include collection of information through Humu-branded surveys and providing Nudges and Pulses (targeted interim surveys to gauge progress) to employees in order to improve the employee experience in key areas identified by Humu's algorithms.  *Id*. ¶¶ 9-10.  The employees receive Humu content through Humu's software on their computers and electronic messages.  *Id*. ¶¶ 18-19.

**B.    Hulu Threatens To Sue And Brings Worldwide Trademark Proceedings.**

Humu filed trademark applications for the HUMU mark with the United States Patent and Trademark Office ("USPTO") in May 2017 and started a website at www.humu.com in "stealth mode" pending its public launch later that year.  FAC ¶ 2.  About six months later, Hulu sent a cease-and-desist letter demanding that Humu stop using the HUMU mark and tradename.  Hulu insisted that the only way Humu could avoid "costly litigation" was to change its name and withdraw its trademark applications.  ECF No. 30-1 (Cendali Decl.) Ex. 1 at 3.  Hulu's letter also

set out the elements of trademark infringement and trademark dilution claims.  On the former, Hulu's letter contended that Humu's "registration and/or use of the HUMU Marks is likely to confuse, deceive, and/or mislead customers into believing that the Applicant's goods and services come from Hulu or that Hulu has licensed, endorsed, sponsored, or otherwise authorized or approved the Applicant's goods and services."  *Id.*  On the latter, Hulu's letter claimed that the "HUMU Marks are likely to cause dilution of the distinctiveness of the [allegedly] famous HULU Marks through blurring and/or tarnishment."  *Id.*  Hulu referenced causes of action under Section 43(a) of the Lanham Act—unfair competition claims based upon Humu's use of the marks.  *Id.*

Shortly after sending its letter, Hulu initiated TTAB opposition proceedings against three different HUMU trademark applications, claiming likely confusion and dilution as to each of them in their entirety.  Shaffer Decl. Ex. A (Hulu's March 12, 2018, Opposition).  The parties then engaged in settlement discussions that went on for months.  Crosby Decl. ¶ 22.  Those discussions failed primarily because Hulu kept insisting upon vague and unspecified restrictions on Humu's services and the way it marketed them.  *Id.*  After the settlement talks failed, Hulu initiated yet another TTAB opposition proceeding attacking a fourth Humu trademark application on January 25, 2019.  That opposition again alleged likely confusion and dilution.  Shaffer Decl. Ex. B (Hulu's January 25, 2019, Opposition).  Meanwhile, Hulu also initiated trademark proceedings against Humu, for example in the UK and European Union.

### C.    Humu Initiates Litigation After Failure Of Protracted Settlement Discussions.

Humu had enough and filed suit on January 18, 2019.  Seven weeks later, on March 11, 2019, Hulu provided its Covenant.  Humu then filed its FAC on March 12, 2019.  Hulu did not serve a revised covenant matching the allegations of the FAC.  In the seven weeks more since providing its Covenant, Hulu has not withdrawn any of its administrative proceedings.  It refused to commit to doing so in the parties' Rule 26(f) conference.

Humu's initial Complaint alleged a dispute between Humu and Hulu arising from Hulu's cease and desist letter as well as Humu's efforts to register its trademarks with the USPTO and resultant opposition proceedings.  ECF No. 1 (Complaint) ¶¶ 18, 19, 23, 25, and Prayer for Relief

sub. ¶¶ B, D (alleging a dispute arising from, in part, Humu's efforts to register the HUMU mark with the USPTO).  Because Hulu's demand letter as well as its TTAB oppositions challenged Humu's applications to register the HUMU mark, the initial complaint sought "[a] declaration from the Court that Plaintiff's use and registration"—including the listed goods and services in those applications—"is not likely to cause confusion" and "does not dilute through blurring and/or tarnishment the HULU mark."  *Id.*, Prayer sub. ¶¶ B, D.  In other words, Humu was and is seeking declaratory relief that Humu is free to use its HUMU mark in connection with the full scope of goods and services listed in its trademark applications.

When Hulu provided its Covenant on March 11, 2019, the two special definitions that did not track the language of the Complaint raised immediate red flags for Humu—the "Humu Customers" and the "Humu Services."  ECF No. 30-1 (Cendali Decl.) Ex. 2 at 1-2.  Hulu had previously expressed concern in settlement negotiations about Humu offering services directed to individuals, and Humu has a reasonable apprehension that Hulu may seek to use the definitions in the Covenant to argue that it does not cover the full scope of Humu's present and future activities. Crosby Decl. ¶ 22.  Accordingly, Humu filed the FAC to include more detailed allegations of goods and services (that it had incorporated only by reference into its original Complaint), setting forth both the full extent of Humu's present activities and those it has taken concrete steps to implement.

It would have been simple at that point for Hulu to moot this dispute.  It could have served a new covenant not to sue that said it would not take action based on any of the activities described in the FAC.  Rather than put this dispute to bed by simply conforming a new covenant to reflect the explicit language in Humu's FAC, Hulu filed its Motion to Dismiss.

## **ARGUMENT**

Hulu does not argue that this Court lacked subject matter jurisdiction over the case when Humu's Complaint was filed.  Nor could it.  Rather, Hulu argues that its later-issued Covenant divested the Court of jurisdiction.  Because subject matter jurisdiction existed when the case was filed, it is Hulu's "formidable burden" to establish that intervening events preclude Hulu from reengaging in its unlawful conduct (*i.e.*, threatening to sue or suing for trademark infringement

HUMU'S OPP. TO MTD
CASE NO. 4:19-cv-00327-HSG

1    and dilution). *Already*, 568 U.S. at 91.  It has not met this burden.

2    I.    **HULU HAS THE BURDEN TO DEMONSTRATE THAT THE CASE IS**
3          **MOOT IN ORDER TO DEPRIVE THE COURT OF SUBJECT MATTER**
           **JURISDICTION.**

4

5          At the time Humu's Complaint was filed, this was a textbook case ripe for declaratory

6    relief because Hulu (1) sent a cease and desist letter outlining infringement and dilution claims

7    and threatening "costly litigation" and (2) filed TTAB oppositions to Humu's applications

8    alleging likelihood of confusion and dilution.  To establish subject matter jurisdiction, a

9    declaratory judgment plaintiff need only show "under all the circumstances … there is a

10   substantial controversy, between parties having adverse legal interests, of sufficient immediacy

11   and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech,*

12   *Inc.*, 549 U.S. 118, 127 (2007).  Hulu's letter and TTAB oppositions more than satisfy the Article

13   III case or controversy requirement.  *See, e.g.*, *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666

14   F.2d 393, 396 (9th Cir. 1982) (holding that a letter claiming likelihood of confusion and implying

15   litigation created subject matter jurisdiction); *Neilmed Prods., Inc. v. Med-Systems, Inc.*, 472 F.

16   Supp. 2d 1178, 1180 (N.D. Cal. 2007) (holding that filing of TTAB proceedings based on

17   likelihood of confusion and dilution created subject matter jurisdiction).[2]  Hulu offers no

18   argument that this Court lacked subject matter jurisdiction at the time this action was filed, nor

19   could it.  Its argument is based entirely upon the effect of its later-granted Covenant.

20         Yet Hulu's Motion leads with the argument that a declaratory relief plaintiff bears the

21   burden of establishing subject matter jurisdiction.  ECF No. 30 (Mot.) at III(A).  This is simply

22   the wrong standard.  Hulu does not and cannot contest jurisdiction over the Complaint *at filing*.

23   There plainly was an actual controversy between the parties after a cease and desist letter

24   threatening "costly litigation," multiple TTAB oppositions, foreign trademark proceedings, and

25   lengthy failed settlement negotiations.  At the time the Complaint was filed, this was a

26   _____

27   [2] The Ninth Circuit's traditional "reasonable apprehension" test used in trademark cases like
     *Chesebrough-Pond's* is, after *Medimmune*, "simply one way that the declaratory judgment
     plaintiff can satisfy the more general all-the-circumstances test."  *23andMe, Inc. v. Ancestry.com*
28   *DNA, LLC*, 356 F. Supp. 3d 889, 915 (N.D. Cal. 2018).

paradigmatic actual controversy justifying Humu's effort to seek declaratory relief. Hulu makes no argument and cites no case to the contrary.

Instead, Hulu's argument is that its own conduct—the Covenant issued *after* the case was filed—mooted the case under the "voluntary cessation doctrine." But the voluntary cessation doctrine establishes that "[a declaratory judgment] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already*, 568 U.S. at 91 (citation omitted). The Supreme Court has made clear that a party like Hulu who has threatened litigation is not entitled to pretend peace and sit back and wait to bring its claim on another day it may deem more auspicious. It is not entitled to maintain the Damoclean option. Hulu can only sue for peace if it truly intends to raise its white flag and surrender.

Thus, to establish voluntary cessation, the burden is squarely on Hulu to show that the Covenant divested this Court of subject matter jurisdiction. It is a "formidable burden." *Already*, 568 U.S. at 91 ("a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." (quotation marks omitted)). Hulu must show it is "absolutely clear" that Hulu will not once again seek to enforce trademark rights against Humu if this case is dismissed. Hulu cannot meet its burden under the voluntary cessation doctrine under the current circumstances.

## II.    HULU CANNOT MEET ITS BURDEN FOR DISMISSAL UNDER THE EXISTING CIRCUMSTANCES.

Under the voluntary cessation doctrine, "[t]he law is not … that a covenant not to sue automatically moots a plaintiff's claims"—instead, a factual analysis is required to determine "whether a controversy remains." *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, No. 13-cv-05038 NC, 2015 WL 7874323, at *4 (N.D. Cal. Dec. 3, 2015); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297–98, 1300 (Fed. Cir. 2009) ("Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant" and

1    finding jurisdiction because the covenant did not cover "current products" that could give rise to

2    "future infringement").  A covenant that "is exhaustive of all potentially infringing products that

3    [the declaratory judgment defendant] may sue for" moots a case, but a covenant that carves out a

4    portion of the dispute or gives anything less than complete relief to the plaintiff is insufficient.

5    *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1122 (N.D. Cal. 2007); *see also*

6    *Already*, 568 U.S. at 93 (requiring a covenant that "is unconditional and irrevocable" and that

7    prohibits a declaratory judgment defendant not just from filing suit, but from "making any claim

8    *or* any demand" (emphasis original)).  The scope must cover past and present conduct as well as

9    reasonably anticipated future actions, and it must cover the declaratory judgment plaintiff's

10   clients and customers.  *Already*, 568 U.S. at 93 (covenant included "distributors and customers"

11   and "not just current or previous designs, but any colorable imitations").

12           To determine if a covenant moots a case, courts consider three factors: "(1) the language

13   of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and

14   (3) evidence of intention or lack of intention, on the part of the party asserting jurisdiction, to

15   engage in new activity or to develop new potentially infringing products that arguably are not

16   covered by the covenant."  *ChromaDex, Inc. v. Elysium Health, Inc.*, No. SACV 16-02277-

17   CJC(DFMx), 2017 WL 7080237, at *3 (C.D. Cal. Nov. 28, 2017) (quoting *Already*).  A

18   defendant's failure to meet any one of the three required factors means that the case is not moot

19   because the covenant does not resolve all potential claims between the parties.  *See, e.g.*, *id.*

20   (holding that a covenant with "carefully prescribed" language did not moot a case); *see also*

21   *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1300 (Fed. Cir. 2009) (finding

22   covenant that did not apply to future infringement was insufficient to moot a case).

23           Hulu has problems under each of these three factors.  The wording of its Covenant

24   incorporates two definitions—the "Humu Customers" and the "Humu Services"—that were

25   drafted by Hulu and do not appear anywhere in Humu's Complaint or the FAC.  These definitions

26   inject uncertainty as to whether Hulu intended the Covenant to encompass all of Humu's existing

27   activities, let alone its planned future ones.  Part A, *infra*.  As to whether the scope of the

28   Covenant covers future activities, Hulu failed to issue a new covenant in response to Humu's

1   FAC detailing its planned future activities, and has maintained its TTAB opposition proceedings

2   against four separate trademark applications, as well as its foreign trademark proceedings in

3   multiple jurisdictions.  These facts all strongly suggest that Hulu has every intention of keeping

4   the fight alive.  Indeed, under this Court's precedents, the TTAB proceedings alone are enough to

5   demonstrate that there is an ongoing controversy requiring denial of the Motion.  Part B, *infra*.

6          Finally, Humu fully intends to expand its business in ways that Hulu has contested.  While

7   Humu markets its services at present primarily to large organizations, the fact of the matter is that

8   its motivational platform is used by individual humans.  And those individual humans can be

9   reached in all areas of their lives whether they are working at a big company or not.  Humu

10  intends to expand its business to offer coaching and other individual supports, precisely as

11  detailed in the FAC.  Humu must have the flexibility to reach its humans wherever they live and

12  work—but this is precisely what Hulu would try to prevent with further litigation.  Part C, *infra*.

13         Hulu cannot meet its formidable burden of absolute clarity under any of the three factors,

14  let alone all of them.  The Motion to Dismiss should be denied.

15  **A.      The Language Of The Covenant Is Problematic Even As Applied To**
16  **         Humu's Current Business.**

17         To divest a court of jurisdiction, a covenant has to show "that it is absolutely clear that the

18  allegedly unlawful activity cannot reasonably be expected to recur," *Already*, 568 U.S. at 95

19  (quotation marks omitted), which in the declaratory judgment context means that the language of

20  the covenant has to be "exhaustive" of Hulu's claims.  *Enplas*, 2015 WL 7874323, at *4.

21         The language of Hulu's Covenant creates significant ambiguity whether Hulu intends it to

22  cover the full scope of Humu's services and Humu's use of the HUMU mark and tradename.

23  Hulu's introduction of the "Humu Customers" definition leaves room for Hulu to argue the

24  Covenant is limited to Humu's use of its mark and tradename with "large enterprises and

25  organizations."  ECF No. 30-1 (Cendali Dec.) Ex. 2 at 1.  Hulu effectively concedes that it

26  believes the covenant is narrow in this way by contending that no controversy exists because

27  Humu "is using the HUMU trademark *only* in connection with business-to-business human

28  resources services," ECF No. 30 (Mot.) at 1 (emphasis in original), and Humu "engages

1   *exclusively* in business-to-business transactions," *id.* at 3 (emphasis added).  Similarly, Hulu's

2   covenant also relies on Hulu's definition of the "Humu Services," which is derived from the

3   Complaint's description of Humu's Nudge Engine to the exclusion of Humu's additional

4   activities and services as alleged in the Complaint and FAC.  ECF No. 30-1 (Cendali Decl.) Ex. 2

5   at 1 (quoting Complaint ¶ 10).  Neither definition—the "Humu Customers" or "Humu

6   Services"—appears in the Complaint or FAC and, as Hulu interprets the definitions in its Motion,

7   they are not reflective of Humu's actual activities as alleged in the FAC or set forth in the

8   concurrently-filed Crosby Declaration.

9        Humu tends to be retained by large organizations and employers, true.  But large

10  organizations are made up of people, and those people receive Humu's services as part of their

11  employment.  As alleged in the Complaint and then the FAC, Humu's Nudge Engine "activate[s]

12  every person in a team" "to take small steps to improve employee happiness, which in turn drives

13  high morale and employee retention."  Compl. ¶¶ 10, 13; FAC ¶¶ 10, 13.  To make that happen,

14  Humu's products include personalized nudges that promote changes from a grassroots level, and

15  that are timely, useful, and actionable at every point in a full employee lifecycle.  Crosby Decl. ¶

16  10.  Humu's products and services are not some software that is sold to HR and which is used

17  exclusively by and internal to that department—the value of Humu's services is that they

18  permeate an organization from top to bottom and motivate all employees and team members to

19  work toward an organization's success.  Indeed, Humu sends thousands of Humu-branded

20  communications like the following examples to individuals *every week*.  *Id.*

21

22

23

24

25

26

27

28

1   These examples from "Wayne at Humu" conclude with a Humu-branded signoff from

2   Wayne using the HUMU mark and logo.



21   Hulu's incorporation of the defined terms "Humu Customers" and "Humu Services" appears to be

22   designed to allow Hulu to argue that Humu's services to individual users are beyond the scope of

23   the Covenant.

24   Hulu's Covenant stands in stark contrast to the covenants described in the cases cited by

25   Hulu, none of which involve covenants with potential carve outs or opportunities to narrow

26   through interpretation similar to those in the Hulu Covenant.  In *Spicy Beer Mix, Inc. v. New*

27   *Castle Beverage, Inc.*, No. CV 14–00720 SJO (JEMx), 2014 WL 7672167, at *5 (C.D. Cal. Aug.

28   1, 2014), the covenant waived all upstream and downstream claims arising out of specific

1    intellectual property in the form of two design patents.  There were no restrictions on how the

2    patents could be used.  The same is true with the trademark in *Already*—Nike agreed not to sue

3    for regarding any colorable imitation of the infringing products, which the Court interpreted as

4    coextensive with the *full scope* of Nike's trademark rights.  *Already*, 568 U.S. at 89–90.  *See also*

5    *Crossbow Tech., Inc. v. YH Tech.*, No. C 03-04360 SI, 2007 WL 174422, at *2–3 (N.D. Cal. Jan.

6    22, 2007) (covenant applied without exception to full scope of allegedly infringing products);

7    *USANA Health Sciences, Inc. v. SmartShake US, Inc.*, No. 2:17–cv–00139–DN, 2018 WL

8    2709215, at *4 (D. Utah June 5, 2018) (covenant not to sue applied to entire trademark,

9    regardless of how used).  Hulu cites no precedent holding that a covenant that leaves room for

10   carve outs such as Hulu's can moot a case.  To the contrary, such a Covenant fails to meet Hulu's

11   burden of establishing "that it is absolutely clear" that Hulu's conduct giving rise to this action

12   cannot recur.  *Already*, 568 U.S. at 85.

13        Hulu's failure to meet its burden on the first factor by showing the Covenant's language is

14   sufficiently and unequivocally broad to moot the case with respect to Humu's *present* activities is

15   dispositive against Hulu's Motion, and the Court need not consider the second and third factors.

16   *See, e.g.*, *Delphix Corp. v. Embarcadero Techs., Inc.*, No. 16-cv-00606-BLF, 2016 WL 4474631,

17   at *3 (N.D. Cal. Aug. 25, 2016) (holding that subject matter jurisdiction exists if the plaintiff has

18   "real and reasonable apprehension that it would be liable for infringement if it continued

19   marketing its product" (quotation marks and citations omitted)), *aff'd on this ground*, 749 Fed.

20   Appx. 502 (9th Cir. 2018).  Indeed, Hulu does not meet its burden of showing mootness because

21   its Motion fails to identify a single good or service identified in the FAC that Humu *is not*

22   presently offering.  *See* ECF No. 30 (Mot.) at 9–10.  The fact that Hulu refuses to issue a

23   Covenant that covers all of those goods and services establishes that the parties' dispute remains

24   and will carry into the future; a point that is further confirmed by the continued pendency of

25   Hulu's TTAB oppositions to Humu's attempt to register its mark with respect to those exact same

26   goods and services.  In any event, the second and third *Already* factors are also not met, and the

27   Motion can be denied on those factors as well.

28

1

**B.     Hulu Did Not Revise The Covenant To Cover Alleged Future Activities Of The FAC And Has Not Withdrawn Its TTAB Proceedings.**

2

3       Hulu's Covenant addresses services "marketed *directly* to the Humu Customers," creating

4  ambiguity and giving Hulu room to argue that the Covenant does not cover Humu's general

5  marketing activities.  ECF No. 30-1 (Cendali Decl.) Ex. 2 at 2 (emphasis added).  Limiting Humu

6  to "marketing directly" to the "Humu Customers" (large enterprises and organizations) is not

7  realistic.  Hulu could interpret the Covenant to not apply marketing efforts through general-

8  interest publications—which is exactly the kind of marketing Humu seeks and has obtained in the

9  past, including favorable articles in The New York Times, The Washington Post, and The

10 Mercury News.  Crosby Decl. ¶ 6, Ex. B.  Humu continues to invest in such marketing and directs

11 employee time to press coverage.  The day before this opposition was filed, a piece by Humu-

12 cofounder Lazlo Bock was filed in Fast Company.  *Id.*  A narrow interpretation of direct

13 marketing also prevents Humu from engaging in other types of common general marketing such

14 as general marketing campaigns (including social media posts) and attending conferences to raise

15 brand and product awareness that, while not specifically targeted to Humu's business-to-business

16 customers, are an important component of the company's marketing efforts.  *Id.* ¶ 7.

17      Effectively, Hulu's Covenant is conditional on Humu limiting its future activities and thus

18 does not satisfy *Already*.  *Already*, 568 U.S. at 93 (holding that a covenant that satisfies the

19 voluntary cessation doctrine "is unconditional and irrevocable").  Although Hulu's Covenant

20 states it is "unconditional," it leaves room for Hulu to condition its applicability on Humu

21 conforming its activities to the scope of the Covenant based on Hulu's interpretation of the

22 "Humu Customers," the "Humu Services," and what constitutes "marketing directly to the Humu

23 Customers."  ECF No. 30-1 (Cendali Decl.) Ex. 2.  In other words, Hulu's covenant forces Humu

24 to decide if it will limit its activities to conform to the scope of Hulu's interpretation of the

25 Covenant "or push forward" into the future with its use of the Humu tradename and HUMU mark

26 "and risk having to destroy infringing product, pay additional damages, and disgorge profits"

27 when Hulu files suit later for activities it claims exceed the scope of the Covenant.  *Delphix Corp.*

28 *v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 505 (9th Cir. 2018).  "These circumstances are

1    ripe for a declaratory judgment." *Id.*

2         Moreover, the continued pendency of Hulu's TTAB oppositions against Humu's

3    registration of the HUMU mark for its present and intended uses is alone a sufficient basis for

4    subject matter jurisdiction under the Declaratory Judgment Act according to the case law of this

5    district. *Neilmed Prods., Inc. v. Med-Systems, Inc.*, 472 F. Supp. 2d 1178, 1180 (N.D. Cal. 2007)

6    (holding that filing of TTAB proceedings based on likelihood of confusion and dilution created

7    subject matter jurisdiction); *Delphix Corp.*, 2016 WL 4474631, at *4 (finding subject matter

8    jurisdiction based on "opposition and cancellation proceedings at the TTAB, both of which

9    invoke the language of trademark infringement and dilution"), *aff'd on this ground*, 749 F. App'x

10   502.[3]  Hulu has not dismissed the pending TTAB proceedings opposing Humu's registration of

11   the HUMU mark in connection with the goods and services in the trademark applications, which

12   are concurrent with the goods and services in Humu's FAC. *See* Crosby Decl. ¶ 4 (describing

13   Humu's applications for specific services based on a sworn bona fide intent to use the HUMU

14   mark with those services), Ex. A (Humu trademark applications); FAC ¶ 14.

15        Allowing Hulu to use its Covenant to circumvent this Court's jurisdiction in favor of

16   TTAB is also contrary to binding Ninth Circuit precedent.  In the Ninth Circuit it constitutes

17   reversible error for a district court to decline jurisdiction over infringement and dilution claims in

18   favor of TTAB proceedings based on the same theories. *Rhoades v. Avon Prods., Inc.*, 504 F.3d

19   1151, 1165 (9th Cir. 2007) (holding that the district court abused its discretion by dismissing

20   declaratory relief claims arising from TTAB proceedings claiming likelihood of confusion and

21   dilution).[4]  The driving force behind the holding in *Rhoades* was judicial efficiency—it was

22   inefficient for TTAB to decide likelihood of confusion and dilution claims because TTAB cannot

23   decide those issues for purposes of infringement and dilution claims brought under 15 U.S.C. §§

24

25   [3] *Delphix* also involved the defendant's refusal to drop TTAB proceedings unless the declaratory relief plaintiff stopped using its name.  2016 WL 4474631 at *2.

26   [4] The *Wham-O* case cited by Hulu is in line with *Rhoades* because that case was limited to narrow issues of registration and did not involve disputes over likelihood of confusion or dilution.

27   *Wham-O, Inc. v. Manley Toys, Ltd.*, No. CV 08–07830 CBM (SSx), 2009 WL 6361387, at *1

28   (C.D. Cal. Aug. 13, 2009) (noting that the TTAB proceedings were to cancel for genericness or lack of bona fide intent to use, *not* infringement-related likelihood of confusion or dilution).

1    1114 and 1125(c).  The district court, however, is empowered to hear the same issues for all

2    purposes—inclusive of registration, trademark infringement, and dilution.  *Rhoades*, 504 F.3d at

3    1165; 15 U.S.C. §§ 1114(1)(a) (infringement/likelihood of confusion), 1125(c) (dilution), 1119

4    (registration).  Thus, unless the issues pending in TTAB are solely related to registration, it is

5    inefficient and an abuse of discretion for a district court to decline jurisdiction in favor of TTAB

6    proceedings.  *Id.*  Keep in mind, here, that Hulu expressly alleged claims under Section 43(a) in

7    its cease and desist letter.

8        Hulu's refusal to drop its pending TTAB oppositions violates the efficiency concern in

9    *Rhoades* because the losing party in a TTAB proceeding must either appeal that decision in a *de*

10   *novo* district court litigation or face the consequences of being collaterally estopped by the TTAB

11   determination on likelihood of confusion and dilution. 15 U.S.C. § 1071(b); *B & B Hardware,*

12   *Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1305 & 1310 (2015) (holding that likelihood of

13   confusion standards in TTAB and district court proceedings are identical and giving preclusive

14   effect to TTAB decisions).  Dismissing this case now in favor of a TTAB proceeding that will

15   adjudicate likelihood of confusion and dilution practically guarantees the multiplicity of actions

16   prohibited by *Rhoades*.  This case remains ripe for judicial determination per *Rhoades* and

17   *Hargis*.

18       Despite Hulu's Covenant, Humu is left in the same position it was when this action was

19   filed:  Hulu can proceed with its TTAB claims of likelihood of confusion and dilution and can, at

20   its future election, let the sword drop and file suit against Humu by relying on a narrow

21   interpretation of the Covenant.  Absent unequivocal representation from Hulu that the Covenant

22   prevents Hulu from carrying this dispute into the future—either through TTAB or a future district

23   court action—Hulu has not met its burden to show with absolute clarity that this case is moot.

24   *See, e.g.*, *ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017) (holding that a

25   declaratory judgment defendant seeking to moot a case needs to "show that it actually granted a

26   covenant not to sue … and that the covenant enforceably extinguished any real controversy

27   between the parties.").

28

1

2

### C.     Humu Intends To Grow Its Business In Ways That Hulu Has Already Threatened.

3

In order to moot the case under the third *Already* factor, Hulu needs to provide a covenant

4

or equivalent representation that Hulu is dropping any "*possible* cause of action based on or

5

involving trademark infringement."  *Already*, 568 U.S. at 93; *Enplas Display Device Corp*, 2015

6

WL 7874323, at *4 (holding that a declaratory relief claim remained ripe because a covenant not

7

to sue failed to address all possible infringement claims).  Otherwise, the case remains ripe for

8

declaratory relief.  But to the extent Humu expands its offerings or marketing, especially to

9

individuals, Hulu's covenant falls short because it does not meet the third *Already* factor that

10

considers whether the covenant moots the case in light of "evidence of intention on the part of

11

[Humu] to engage in conduct not covered by the covenant."  568 U.S. at 90 (citations, alterations

12

and quotation marks from original omitted).[5]

13

Hulu previously threatened to pursue claims against Humu if it provided services under

14

the Humu brand directly to individuals, and the fact that Hulu's Motion is based on the incorrect

15

predicate that Humu's services are "exclusively business-to-business" indicates Hulu is not going

16

to drop its threats.  ECF No. 30 (Mot.) at 3.  There remains a live dispute because Humu has not

17

and will not agree to any such limitation.  Doing so would impede the growth of the company and

18

require Humu scrapping plans to expand that are already in the works.  *See* Crosby Decl. ¶¶ 6-19.

19

The fact that Hulu's motion is predicated on an inaccurate representation that Humu's services

20

are limited to "business-to-business transactions"—a representation that Humu vigorously

21

rejects—is ample evidence that Hulu is seeking to evade this Court's jurisdiction while reserving

22

the threat of future claims against Humu.

23

Humu's business is growing, and it will continue to become even more visible to

24

individual consumers through offerings such as a mobile app and increased marketing efforts.

25

Humu previously made Hulu aware of its intent to engage in general marketing that is not

26

_____

27

[5] Hulu's argument that evidence of intent is somehow irrelevant fails in light of *Already*'s explicit consideration of this factor.  Further, Hulu does not cite a single case that holds otherwise when considering a covenant not to sue—every case relied on by Hulu in this portion of its brief looks at jurisdiction at *time of filing*, which is not this case.

28

HUMU'S OPP. TO MTD
CASE NO. 4:19-cv-00327-HSG

1   "direct" to business executives, with one example being airport billboards, which Hulu can argue

2   lie outside of the scope of the Hulu covenant's limitation to direct marketing to large businesses.

3   Crosby Decl. ¶ 22.  In addition to generalized marketing, Humu has taken steps to expand its

4   offerings to provide services directly consumers such as by offering apps that will be available on

5   the Apple App Store and Google Play Store.  *Id.* ¶ 19.  Such expansion is inevitable because

6   Humu's services are ultimately designed to increase human happiness and effectiveness at the

7   professional level.  To provide individual services, Humu will need to expand in a manner than

8   increases individuals' access to Humu's services and the Humu brand.  Hulu's covenant and its

9   motion to dismiss purports to leave open the possibility that Hulu will sue on these future uses.

10         The facts in *Already* are instructive as to why the Covenant does not moot the case.

11   There, Already made a shoe that Nike claimed infringed its Air Force 1 trademark.  568 U.S. at

12   88.  The parties engaged in litigation and after Already served counterclaims seeking to cancel the

13   Air Force 1 mark, Nike issued a covenant not to sue.  *Id.* at 88–89.  *Already* held that the

14   covenant was sufficiently broad because (1) it covered Already's current shoe models, *and* (2)

15   covered any "colorable imitation" of the existing shoe models.  *Id.* at 95.  Because Nike's claim

16   was that Already's existing shoes infringed as "colorable imitations" of Nike's marks, the

17   covenant was coextensive with Nike's Air Force 1 trademark and precluded any future claim by

18   Nike against Already's shoes.  *Id.* 95 (noting that no one—from the parties, the lower courts, to

19   the Supreme Court—could identify a prospective shoe design not covered by the covenant).

20         Hulu's refusal to conform its Covenant to the FAC and statements made in the present

21   Motion indicate that Hulu does not believe its Covenant covers services provided to individuals

22   under the HUMU mark or general marketing Humu intends to engage in.  Since Humu has

23   concrete plans to offer such services (and is already offering services at the individual level to

24   employees of its business clients), this case is not moot per *Already.*

25

26

27

28

HUMU'S OPP. TO MTD
CASE NO. 4:19-cv-00327-HSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **CONCLUSION**

If Hulu intends not to sue Humu for all of its actual and planned activities identified in the FAC, it must bind itself to voluntary cessation with a clear covenant not a murky one.  It must drop its TTAB proceedings.  Unless and until those two things happen, this case is not moot.  Hulu's Motion to Dismiss should be denied.

Dated: April 23, 2019

ANNETTE L. HURST
DIANA M. RUTOWSKI
NATHAN SHAFFER
ANDREW J. KIM
Orrick, Herrington & Sutcliffe LLP


By:   */s/ Annette L. Hurst*
Annette L. Hurst
Attorneys for Plaintiff
Humu, Inc.